UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM WHINEGLASS,
on behalf of himself and
those similarly situated,

   Plaintiff,

v.         CASE No. 8:11-CV-2784-T-23TGW

KEVIN SMITH, O.D.,
and KEVIN SMITH, O.D. &
ASSOCIATES, INC.

   Defendants.

_____

## REPORT AND RECOMMENDATION

   The plaintiff alleges that the defendants, who own and operate the

Infinity Eye Care Center where he was employed, violated the Fair Labor

Standards Act (FLSA) by failing to pay him wages for hours worked in excess

of 40 in a workweek. The plaintiff asserted in his complaint an intention to

represent a collective action of similarly situated employees. In this regard,

the plaintiff has filed a motion for conditional certification of a collective

action consisting of himself and three other former employees of Infinity Eye

Care Center who were allegedly not paid overtime compensation to which

they were entitled (Doc. 27). The defendants oppose the motion on the ground that the opt-in plaintiffs are not similarly situated to the plaintiff (Doc. 34).

The plaintiff has proffered sufficient evidence that he and the opt-in plaintiffs are similarly situated in that they were allegedly subjected to a common payroll practice or policy that violated the FLSA. I therefore recommend that the plaintiff's Motion for Conditional Certi[fi]cation as Collective Action Pursuant to 29 U.S.C. § 216(b) (Doc. 27) be granted.

I.

Plaintiff William Whineglass worked at the Infinity Eye Care Center from September 17, 2010, until October 28, 2011 (Doc. 31, ¶3). Defendant Kevin Smith is the owner of the defendant corporation, which does business as Infinity Eye Care Center ("Infinity") (Doc. 1, ¶¶3, 4; Doc. 35, ¶1). Infinity is a small business which provides optometry and eyeglass services in two locations in Hillsborough County.

Whineglass was an office manager for Infinity from October 2010 until August 2011, after which he was demoted to a non-managerial position for the remainder of his employment (Doc. 35, ¶5). Whineglass asserts that he and other Infinity employees regularly worked more than 40 hours in a workweek (Doc. 31, ¶4). Further, Smith allegedly knew that his employees

-2-

were working more than 40 hours per workweek, as Whineglass avers that he told Smith on numerous occasions that Smith's failure to pay employees for hours worked over 40 was unlawful (id., ¶5). Whineglass asserts that Smith, nevertheless, would report (or direct Whineglass to report) to the payroll company that Whineglass and other employees worked only 40 hours each workweek (id., ¶¶6, 7). According to Whineglass, Smith responded to Whineglass's statement about needing to pay overtime that the employees should all be thankful to have jobs (id., ¶9).

On December 16, 2011, the plaintiff filed a complaint against the defendants, alleging that they had violated the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.*, by willfully not paying him any wages (straight or overtime compensation) for hours worked in excess of 40 in a workweek (Doc. 1).[1] Further, the plaintiff stated an intention to pursue a collective action on behalf of similarly situated employees who were allegedly not paid overtime compensation (id., ¶¶5, 8). Thereafter, four former Infinity employees

---

[1]The FLSA requires that employers pay their non-exempt employees time-and-a-half for hours an employee works in excess of a 40-hour workweek. See 29 U.S.C. 207(a)(1).

-3-

consented to become plaintiffs in this action (Docs. 9-10, 12-13), one of whom subsequently withdrew her consent (Doc. 26).

On September 13, 2012, the plaintiff filed a motion to conditionally certify an FLSA collective action pursuant to 29 U.S.C. 216(b) (Doc. 27). The proposed collective action is comprised of the plaintiff and former Infinity employees Jennifer Zambrana, Daniel Seltzer, and Sheri Evanson (id.; Docs. 29-32).

Zambrana was employed by the defendants from March 2011 to November 2011 to staff the front desk and as a technician (Doc. 32, ¶¶3, 5). Zambrana, who was paid as an hourly employee, states that she regularly worked more than 40 hours in a workweek (id., ¶¶4, 5). Specifically, Zambrana avers that she averaged over nine hours each weekday shift, and that she also occasionally worked on Saturdays (id., ¶5). Zambrana alleges that, "[d]espite telling ... Smith that employees, including myself, were putting in more than 40 hours a week, [Smith] would log down myself ... for working only 40 hours when [Smith] would call in hours to the payroll company. My pay stubs would reflect that I only worked 40 hours a week, despite working substantially more" (id., ¶7).

Daniel Seltzer was employed by the defendants from March 2009 to September 2010 as a lab technician, and he also crafted eyeglasses (Doc. 30, ¶¶3, 5). Seltzer, who was paid as an hourly employee, avers that he regularly worked more than 40 hours in a workweek (id., ¶¶4, 5). Specifically, Seltzer states that he worked approximately 52 hours weekly (id., ¶5). Seltzer asserts that he told Smith on numerous occasions that Smith's failure to pay him for hours worked over 40 was unlawful, but that Smith would nonetheless report to the payroll company that Seltzer worked only 40 hours each workweek (id., ¶¶6, 7).

Sheri Evanson states that she was employed by the defendants from March 2009 to July 2010 to staff the front desk, and as a technician (Doc. 29, ¶¶3, 5). Evanson, who was paid as an hourly employee, avers that she was regularly required to work more than 40 hours in a workweek (id., ¶¶4, 5). Specifically, Evanson states that she worked, on average, ten hours during each weekday shift, except Thursday, when she worked from 9 a.m. until at least 7:30 p.m. (id., ¶5). Evanson asserts that she also occasionally worked on Saturdays (id.). Further, Evanson states that Smith was told on numerous occasions that Evanson worked well over 40 hours in every workweek, yet Smith reported to the payroll company that Evanson worked

only 40 hours each workweek (id., ¶¶6, 7). Thus, Evanson stated that her "pay stubs would reflect that I worked only 40 hours a week, despite working substantially more" (id., ¶7).

The defendants oppose conditional certification of this collective action on the ground that the plaintiff is not similarly situated to the opt-in plaintiffs (Doc. 34). In this regard, Smith filed an affidavit averring that Whineglass's duties as an office manager were dissimilar from those of the opt-in plaintiffs, and that Whineglass was not employed at Infinity during the same time period as Evanson or Seltzer (Doc. 35, ¶¶3, 6, 7). Furthermore, the defendants argue in their memorandum that Whineglass's pay provisions were different than the opt-in plaintiffs because, for most of Whineglass's employment, he was a managerial employee who was paid a weekly salary (Doc. 34, p. 3). Thus, the defendants argue that, unlike the opt-in plaintiffs, Whineglass was subject to the FLSA managerial exemption to overtime compensation.

The plaintiff's Motion for Conditional Certi[fi]cation as Collective Action Pursuant to 29 U.S.C. 216(b) (Doc. 27) and the defendants' related Motion to Strike References to "Collective Action" from the Plaintiff's

Complaint and Other Filings (Doc. 25) were referred to me for a report and recommendation (Doc. 36). Thereafter, oral argument was held on the motion.

At the hearing, plaintiff's counsel clarified he is not requesting that notice of this action be sent to other potential plaintiffs. Rather, counsel confirmed that the plaintiff requests only conditional certification of a collective action comprised of himself and the other three former Infinity employees who have already filed timely notices to opt-in (see Docs. 9, 10, 12).[2] Thus, the collective action would be closed to additional plaintiffs.

II.

A. The FLSA permits collective actions against employers brought by any employee "for and in behalf of himself ... and other employees similarly situated." 29 U.S.C. 216(b). Participants in a collective action must affirmatively opt into the lawsuit, and the collective action must be certified by the court. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258-59 (11th Cir. 2008). Collective actions under the FLSA allow the judicial system to efficiently resolve the claims of multiple plaintiffs in one proceeding where

---

[2]Further, as the defendants point out, the deadline for joining parties has passed (see Doc. 17).

those claims contain common issues of law and fact arising from the same alleged unlawful conduct. See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).

The Eleventh Circuit endorses a two-stage process for FLSA collective action certification. Morgan v. Family Dollar Stores, Inc., supra, 551 F.3d at 1260. At the first stage, the court determines whether there are other "similarly situated" employees who wish to opt-in to the lawsuit. Id. at 1260-61. As indicated, there are three opt-in plaintiffs in this case, so the only issue presented by this motion is whether the opt-in plaintiffs are similarly situated to the named plaintiff.

The plaintiff has the burden of showing a "reasonable basis for his claim that there are other similarly situated employees." Id. at 1260. However, the burden on the plaintiff is not a heavy one. Id. at 1261. The conditional certification decision is usually based only on the pleadings and affidavits. Anderson v. Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007), cert. denied, 553 U.S. 1093 (2008); Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001), cert. denied, 534 U.S. 1127 (2002). Therefore, because the court has minimal evidence before it, the "determination is made

using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Hipp v. Liberty Nat. Life Ins. Co., supra, 252 F.3d at 1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)). If the court grants conditional certification, potential plaintiffs may be given notice of the action and the opportunity to "opt-in." Morgan v. Family Dollar Stores, Inc., supra, 551 F.3d at 1261 n. 40. The case then proceeds as a representative action throughout discovery. Hipp v. Liberty Nat. Life Ins. Co., supra, 252 F.3d at 1218.

The second stage of the certification process is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." Id. During the second stage, the standard to show substantial similarity is more stringent, as the court "has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity." Morgan v. Family Dollar Stores, Inc., supra, 551 F.3d at 1261. If it is determined at the second stage that the representative plaintiff and the opt-in plaintiffs are not similarly situated, the district court "decertifies" the collective action; the opt-in plaintiffs are then dismissed without prejudice;

and the original representative plaintiff continues to trial on his original claim. Hipp v. Liberty Nat. Life Ins. Co., supra.

    B. At the conditional certification stage, there is no required list of factors which determine whether the potential plaintiffs are "similarly situated" to the plaintiff. Thus, the FLSA does not define "similarly situated," and the Eleventh Circuit has not adopted a precise definition of the term. Morgan v. Family Dollar Stores, Inc., supra, 551 F.3d at 1259. However, it is clear that, at the conditional certification stage, the similarly situated requirement is "less stringent than that for joinder under Rule 20(a) [F.R.Civ.P.] or for separate trials under [Rule] 42(b)[F.R.Civ.P.]," so that the plaintiff is not required to show that common questions predominate among the collective action members, or that the claims arise out of the same action or occurrence. Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996), cert. denied, 519 U.S. 987 (1996).

    Factors considered in determining whether the potential plaintiffs are similarly situated to the named plaintiff include (1) job duties and pay provisions and (2) whether they were subject to a common policy, plan, or scheme that forms the basis of the alleged FLSA violation. Dybach v. State

of Florida Dept. of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991);
Vondriska v. Premier Mortg. Funding, Inc., 564 F.Supp.2d 1330, 1334-35
(M.D. Fla. 2007).

### III.

The plaintiff argues that he and the opt-in plaintiffs are similarly
situated because they were all subject to a "common policy or plan that
violated the [FLSA]" (Doc. 27, p. 1). Specifically, the plaintiff alleges that
they all regularly worked for the defendants more than 40 hours per
workweek, but that defendant Smith had a common practice or policy to report
to the payroll company that each of them worked only 40 hours per workweek,
so that none of them received straight or overtime compensation for hours
worked in excess of 40 hours per workweek, in violation of FLSA's overtime
provisions (id, p. 2). The defendants oppose this motion, arguing that the
plaintiff is not similarly situated to the opt-in plaintiffs because their job
duties, pay provisions, and time periods during which they worked at Infinity
differ (Doc. 34, pp. 3-4).

The evidence presented by both parties was meager and weak.
However, in consideration of the lenient standard at this stage of the litigation,

the plaintiff's evidence that he and the opt-in plaintiffs were subject to a common payroll policy or practice which violated the FLSA is sufficient to conditionally certify the collective action.

In support of this motion, the plaintiff submitted four affidavits from the members of the putative collective action which commonly allege that, while employed by the defendants, they (1) regularly worked more than 40 hours in a workweek, (2) defendant/owner Kevin Smith knew they worked in excess of 40 hours weekly, yet (3) Smith logged them as working 40 hours and reported to the payroll company (or directed Whineglass to report to the payroll company) that the employee worked 40 hours during the workweek (Docs. 29-32). In sum, the plaintiff has presented evidence that each member of the putative collective action was  subject to a common payroll practice, implemented by the same decisionmaker, which violated the FLSA in the same manner.

A pattern or standard practice of denying due compensation may satisfy the "similarly situated" requirement for conditional certification of a collective action. See Reed v. Mobile County School System, 246 F.Supp.2d 1227, 1233-34 (S.D. Ala. 2003)(a "pattern or practice" of not paying

employees earned overtime compensation satisfies the "similarly situated" requirement); Longcrier v. HL-A Co., 595 F. Supp.2d 1218, 1237 n. 25 (S.D. Ala. 2008)(employees are similarly situated because they were all subject to, and adversely affected by, the same pay policies and practices); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 364 (M.D. Ala. 1999)(pattern of potential FLSA minimum wage and overtime violations is evidence that these employees are "similarly situated" within the meaning of §216(b)); see also Morgan v. Family Dollar Stores, Inc., supra, 551 F.3d at 1264 ("[t]here is nothing unfair about litigating a single corporate decision in a single collective action").

Similarly, collective action certification appears appropriate here because, not only do the plaintiffs allege that they were subject to a common unlawful payroll practice, but that they all worked for this small business, performing optical-related services, in the same location, that was operated by the business's owner, Kevin Smith, who allegedly implemented this illegal practice. Thus, the similarities among the plaintiffs extend beyond a common payroll practice to other employment circumstances.

The defendants argue that certifying a collective action on this basis essentially imposes no standard at all (see Doc. 34, p. 2). Thus, they argue that, under this rationale, any group who alleges a FLSA violation by a common employer could then be certified as a collective action. However, that is not the circumstance here. Thus, all of the putative collective action members in this case are alleging FLSA violations pursuant to the same policy or practice, which was implemented by the same decisionmaker in the same manner, and resulting in the same type of FLSA violation. Thus, this case undoubtedly presents common material factual and legal circumstances that are absent when all that the putative collective action members have in common is their employer.

The defendants also oppose conditional certification on the ground that the plaintiff "has failed to allege facts from which this court can find any employee was similarly situated to the plaintiff" (Doc. 34, p. 2). Specifically, the defendants argue that the plaintiff and the opt-in plaintiffs did not have the same job duties or pay provisions, they did not work for the defendants at the same time (except for Zambrana), and that "[n]one of the [opt-in plaintiffs] were subjected to the same policies and practices as

[plaintiff] Whineglass" (id., pp. 3-4).   These arguments are unpersuasive because they concern facts or issues that are legally insignificant at this stage of the proceedings.

Thus, as discussed above, the plaintiff has presented evidence that he and the opt-in plaintiffs were subject to a common payroll practice or policy that violates FLSA's overtime provisions.  The defendants have not presented evidence which directly contravenes those allegations. Furthermore, their pay provisions were similar in that (except possibly for the period that the plaintiff was an office manager) they were all hourly employees who were entitled to overtime compensation for hours worked in excess of 40 in a workweek.

Moreover, although the plaintiff and two opt-in plaintiffs did not work during the same time period, it is not apparent, and the defendants have not explained, why this distinction is legally significant under the circumstances of this case.  Thus, regardless of when they worked for the defendants, the circumstances underlying their FLSA claims are similar. Accordingly, the fact that they were employed at different times presently appears inconsequential.

The defendants also emphasize that the plaintiff's job duties differed from those of the opt-in plaintiffs. Although job titles and duties are factors to consider, the Eleventh Circuit "refuse[s] to draw bright lines" in defining "similarly situated," and emphasizes it is a "flexible" standard. Morgan v. Family Dollar Stores, Inc., supra, 551 F.3d at 1261. Thus, although these factors are unquestionably significant in cases involving larger or more complex businesses, it is not apparent, and the defendants do not explain why, the differences in job duties is material under the circumstances of this case.

Thus, all of the opt-in collective action members were hourly employees at some point during their employment, so that, regardless of their differing job duties, they all similarly have a basis to claim that they were adversely affected by the defendants' alleged policy to pay them 40 hours per workweek when they worked in excess of 40 hours. Furthermore, since it is undisputed that all of the opt-in plaintiffs were hourly workers for the entirety of their employment (see Doc. 34, pp. 2, 3), and there has been no mention of an FLSA exemption applicable to them, it is not apparent that their differing job duties will be material in this case.

Significantly, courts have conditionally certified collective actions comprised of employees with different job titles when, similar to this case, they were subject to common payroll policies that violate the FLSA. See, e.g., Harper v. Lovett's Buffet, Inc., supra, 185 F.R.D. at 364-65 (employees of a restaurant with varied job titles conditionally certified based on a pattern of potential FLSA minimum wage and overtime violations); Vargas v. Richardson Trident Co., 2010 WL 730155 at *5 (S.D. Tex.)(unpub. dec.)("The payroll practice defines the class, not the job titles"); see also Garrison v. Chuck, Carol & Company, Inc., 2007 WL 1106128 at *4 (M.D. Fla.)(unpub. dec.)(authorizing notice of the lawsuit to potential plaintiffs despite differences in the duties performed by the plaintiffs because the law does not require that each employee perform the exact same duties or hold the same position when each was allegedly subject to the same pay practice violative of the FLSA).

The only contention by the defendants that at this point seems to have any persuasive force is that the plaintiff is not similarly situated to the opt-in plaintiffs because he was, for the majority of his employment, a managerial employee subject to FLSA's managerial exemption, and was paid

a salary. See 29 U.S.C. 213.  However, neither the plaintiff's nor Smith's affidavit aver that the plaintiff was paid a salary (see Docs. 31, 35). Accordingly, the issue of whether the plaintiff was a managerial employee who was paid a salary is properly evaluated in a motion for decertification after the facts are more fully developed. See Morgan v. Family Dollar Stores, Inc., supra, 551 F.3d at 1261-62 (noting that courts should consider at the second stage "the various defenses available to defendant[s] [that] appear to be individual to each plaintiff"); Vondriska v. Premier Mortg. Funding, Inc., supra, 564 F.Supp.2d at 1335 ("[V]ariations in specific duties ... or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage.").

In all events, there were a number of workweeks when the plaintiff was not the office manager and was an hourly employee. Thus, he was hired on September 17, 2010 (Doc. 31, ¶3), and did not become the office manager until early October 2010 (Doc. 35, ¶5). He was demoted to a non-managerial position, which was not described, on or around August 4, 2011 (id.).  His employment ended on October 28, 2011 (Doc. 31, ¶3). Consequently, for several weeks before he became office manager, and for a

number of weeks after he was demoted, he apparently was an hourly worker who was similarly situated to the others with respect to the office policy not to pay any compensation for hours worked during a workweek in excess of 40. The defendants make no argument, and cite no authority, for the proposition that the plaintiff cannot be considered similarly situated to the opt-in plaintiffs unless he was similarly situated throughout the entire period of his employment.

In support of their position, the defendants cite to three cases from this district where motions to conditionally certify collective actions were denied (Doc. 34, pp. 3-5). However, the factual circumstances of those cases are inapposite and, therefore, they do not show that conditional certification is improper in this case.

In West v. Verizon Communications, Inc., 2009 WL 2999181 (M.D. Fla.)(unpub. dec.), the plaintiff unsuccessfully sought to certify a collective action of account managers. However, West presented a unique factual situation where the plaintiffs were on-call employees who were permitted to perform non-work related activities during their on-call time. Consequently, it was apparent from the outset of that case that individualized

-19-

inquiries of each putative plaintiff's daily activities would be necessary to determine whether they even worked over 40 hours in a particular week, thereby "contraven[ing] the basic theory of judicial economy upon which the certification of collective actions is based." Id. at 3. It is not presently evident that, in this case, a collective action would not be judicially economical.

In Tussing v. Quality Resources, Inc., 2009 WL 4350253 (M.D. Fla.)(unpub. dec.), a motion for conditional certification of a group of call center representatives was denied. However, Tussing presented widespread issues regarding the applicability of exemptions and differing commission rates, which could have necessitated individualized inquiries for hundreds of employees. Id. at **1, 3. Thus, Tussing is inapposite to this case as well.

Finally, in Ramos v. Burger King Corp., 2011 WL 4634024 (M.D. Fla.)(unpub. dec.), the plaintiff sought to certify a collective action of general managers and assistant managers, all of whom asserted that they were misclassified as exempt from FLSA's overtime provision. Id. at *1. Determination of the exemption issue would require an examination of the job duties of all of the putative plaintiffs, whose roles varied depending upon the restaurant location and volume. Id. at *2. In contrast, here there is only one

employee possibly subject to a management exemption for a portion of the time he was employed by the defendants.

In sum, with regard to the similarity of the opt-in plaintiffs and concerns of judicial economy, the cases cited by the defendants are inapposite. Accordingly, they are not persuasive in showing that conditional certification of a collective action in this case is improper.

Significantly, unlike a typical FLSA certification motion, the plaintiff is not requesting that notice to be sent to other potential plaintiffs. In fact, the time for adding parties has passed (Doc. 17). Furthermore, the members of the collective action – a total of four, including the plaintiff – have already been determined. Therefore, conditionally certifying the collective action does not impose a great burden under these circumstances. Moreover, as indicated, this is not a final determination, so that, if discovery subsequently reveals that it is not prudent to try this case as a collective action, the matter may be decertified.

## V.

In sum, considering the totality of the circumstances and the lenient standard employed at this stage of certification, I recommend that the

-21-

plaintiff's Motion for Conditional Certi[fi]cation As Collective Action Pursuant to 29 U.S.C. § 216(b) (Doc. 27) be granted to the extent that a collective action comprised of the plaintiff and opt-in plaintiffs Jennifer Zambrana, Daniel Seltzer, and Sheri Evanson be conditionally certified.

I further recommend that, if the collective action is conditionally certified, the defendants' Motion to Strike All References to "Collective Action" in Plaintiff's Complaint and Other Filings (Doc. 25) be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED:  NOVEMBER 14, 2012

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).